Mr. Donnelly. Good morning. Good morning. My name is Brian Donnelly and I represent Mr. Washington. However, looking at the briefs that he's filed, maybe I should represent myself as co-counsel in today's argument. I did want to mention, just briefly touch on two things he raised in his brief. One was, he talks about, excuse me, one was the, I think in his brief he raised a Sixth Amendment right to confrontation. There was a witness named May who was in custody who was brought in by the government expecting to testify that he had had a conversation with the defendant. The defendant made a confession to him. The government produced an FBI agent who testified as to an interview he had with that witness on occasion where the witness did, in fact, inculpate Mr. Washington. I know there was an objection made at that time and I think it's a question from Mr. Washington's standpoint whether or not that's a material issue or harmless error, but it was, it seemed beginning in hearsay, through the back door. The second one was that Mr. Washington did raise the issue about refusal to allow him to testify. Really in his conversation, or his letters to me in his brief, it really goes into an issue of whether or not there was a disagreement between he and his lawyers to how this should be handled. And I'm aware of the fact that in the trial transcript, the trial judge did, at great length, talk to Mr. Washington about his right to testify or not to testify. But what I did not discover until just preparing for this was that the court says, well, I'll get back to you tomorrow and you give me your answer on this, and the court never did get back to him. So there is no, there was a discussion, I can imagine what happened, there was conversation through law clerks, etc., but there is no statement on the record where Mr. Washington waived his constitutional right to testify at this particular trial. So I didn't brief that issue, because like I said, I just ran across it, but I think on his benefit, it's not really the issue he raised either, but it's one that I stumbled across, and unfortunately I don't know, just simply not having it on the record raises an issue that should be brought before the court. I assume the reason we are here is because of the Supreme Court case in Figueroa, if I pronounced that correctly. I'm aware of the Fourth Circuit position on Jones, all the predecessor cases and everything they relied on as to whether or not there had to be knowledge that the victim being transported in interstate commerce for the purpose of prostitution was a minor, and the holdings were, no, you don't have to prove knowledge. We then had this Supreme Court case, and I guess the issue before the court would be whether or not that is a game changer, and we now have to look at the age of the witness. There have been some cases after that, some recently, 2013, I think, was Taveres from the First Circuit. I didn't cite that. I did try and cite Cox and Daniels to give you the benefit of recent cases. In my reading of the Federal Court case, excuse me, the Supreme Court case, I understand, I had six justices who all ruled in a very broad manner that the word knowing applies to everything that follows thereafter. I have it sent by Justice Scalia and Thomas, I believe, that says we don't necessarily have to look at the word knowingly. All we have to do is look at the text of the particular statute that's involved, and we can make our decision based on that and that alone. I kind of lean towards that as probably the best way to approach that case. I didn't know that it was necessary to go in and really examine the knowing issue. The third justice, Alito, is the one that gives us the most concern because he says, I think we've opened Pandora's box. You're challenging every particular crime on the basis of knowing, and I think we've gone too far, and I would agree with that. And then he cites, for example, and he cites the case that's now before this court, transporting a minor across state lines. And the majority cites, at least implicitly, refers approvingly to Justice Alito's dissent as perhaps an exception to this general rule. Would you agree with that? I'm not sure that there's been, I think in the Tavers case, I believe that I cited to you, their statement was the majority didn't object to what he did. They sort of backhandedly allowed him to take that position. What concerns me is that there's still six justices. The majority of the court has put it in black and white. Now maybe they didn't mean it to go that far. Maybe all of the arguments that were the old arguments about protecting children as a protected class still apply, but you nevertheless have the majority opinion, with that knowledge before them, still nevertheless writing an opinion which is very broad. And if you were to strictly adhere to that, I think it's a, it seems to me that we're trying to take square pegs, put them in round holes by shaving off the edges. I think everybody wants the word knowledge of a child's age not to be an issue, but it seems to me that the Supreme Court has opened the door to that and has left a great deal of confusion. Well maybe this is a question better addressed to the government council, but can you think of an example where knowingly would apply to transports as opposed to the age of the child? There is a case that I did not quote, Shem, which I think is 854 Fed 3rd, 394 2nd Circuit, which was 09, right after the Supreme Court ruled, and that was talked about. They held that you had to have knowledge of the not only transporting, but you had to have knowledge of the interstate nature, that you had to know that you were going interstate commerce. This particular case, the instructions to the jury were that you specifically do not have, the government does not have to prove the defendant had knowledge of transport, only transport. So you're conceding that knowingly does some work with respect to other portions of the statute besides the age of the victim? I'm sorry, would you repeat the question? Based on that summary of that case that you presented, it suggests that you, and I don't want to put words in your mouth, are you conceding that knowingly in fact does some work with respect to all the other portions of the statute besides age? Knowingly, so that you just cited indicated that there could be... That had nothing to do with the interstate. That's not an issue that's been raised in this case. Maybe it should have been. Alright, so your principle argument is that we've got the Supreme Court precedent, we ought to apply. I'm having trouble understanding how it doesn't apply. I know nobody wants it to apply, and I think we keep going back to what it was before you have this protected group. The case itself, the Supreme Court decided you have the aggravated identity theft. You have a class of victims who are the public, I guess, or anybody who receives or is presented with a fake or fraudulent ID. But then you have the aggravated, another statute, aggravated, where you actually have a true victim. And you have another class of people we're trying to protect, and the courts have said, well, you've got to know, you just can't have it by circumstances, I understand, or accident. They pick a real person, you've got another class that's going to be the victim of this particular crime. Actually I think children fall in that same line. I mean, historically we want to protect the children, but still, the interstate transportation of a female, say for example, the Mann Act, we now got, which is a crime itself, but you now have a protected class, which is children, and especially in today's world, there doesn't seem to be a provision for whether or not the defendant knows it's a child, considering what the victim can look like, act like, dress like, present identification. In this particular case, there was no identification that was presented. Mr. Washington apparently asked for it, but he was, I believe, told at one time that she was of a majority, but most important, which he stated, which she stated, was that she was arrested down in Birmingham as a prostitute and treated by the court system down there as an adult, not a juvenile, which leads credence to his argument with his position the attorney took, that he was not in fact, that she was not in fact a minor, but was in fact the appearance of, or outwardly, of the majority. So, in taking, if I took the Aurora case and our statute and just, and tried to use the context of the two, the definitions of both of them and just change the wordage, changing identity of an individual, changing minors, it still looks like that the Supreme Court case does in fact impose upon the courts the duty to impose that knowingly as one of the elements of the offense. And maybe the attorney is absolutely right that this did open up a box, a Pandora's box, and that we've now been presented with a whole lot of challenges to every statute. But they did it, and six of them did it. And they did it apparently with knowledge of something that Alito was talking about. And I think they could have, in the body, the main body of that opinion, and they could have stated affirmatively that, given better examples themselves of what they were intending not to include. It's sort of awkward that you say, and if you have the victim, if the child is the victim, and there's a protected class, so we don't have to put the word knowing in front of that. So, what happens if we all of a sudden decide that, but we do put it in front of an individual who's lost their identity. Well, what if we decide at some point that we want to call individuals a protected class because of the way they're being treated, the way identity theft has affected all of us now. If we call them now a protected class, all of a sudden you could remove the requirement to put willful in front of that. So, I guess the basis of that argument is that the true reading of that case would say that, in this particular case, the court misinstructed the jury. The second issue I had raised was a sentencing issue, and I'll just rely on my brief as to that. Okay. Do you have any questions? I think we understand your position. All right. Thank you. Good morning. I'm Brian Hood. I'm an assistant United States attorney here in Richmond, and let me begin by saying what the defendant is asking this court to do is to reverse its own precedent in United States v. Jones and be the first of seven circuits who have examined Section 2423A with regard to defendant's knowledge of age. Over the span of 40 years, and suddenly hold that the government must prove that the defendant had knowledge of the minor's age for him to be guilty of offense. But all of those, I think, except for maybe one or two, were cases that were decided before Flores-Figueroa, right? Judge Diaz, actually, it's three. It's three cases. The government's brief, we missed U.S. v. Tavares, which is a 2013 case out of the First Circuit. So three cases, Tavares, Daniels, and Cox, have all examined this issue since Flores-Figueroa and have relied on Flores-Figueroa and the contextual analysis to come to the conclusion that nothing has changed. And the contextual analysis is a very strong one. The statute has been on the books at least since 1948. The First Circuit to do the analysis of this mens rea was U.S. v. Hamilton in 1972 in the Third Circuit. Since 1972, beginning in 1978, and up until this year, the Congress has returned to 2423 ten times. When this Congress had returned to 2423, nine times. And every time, even though they made minor tweaks here and there with regard to the statute, they never added an explicit mens rea or science requirement or comment. And that was because we can presume that the Congress is aware of all the judicial activity that's going on. Multiple cases are examining it, and they are uniformly holding that the defendant is not required to know the victim's age to be guilty of the offense. So Congress doesn't have the incentive to tinker with the statute that we can infer is working as Congress intended. That is the context. And I would like to just address a couple things that Mr. Donnelly said with regards to his characterization of Flores Figueroa. And with all due respect to the defendant, his characterization of Flores Figueroa is too absolute and not quite accurate. The reality is in the majority opinion, Justice Breyer actually did provide some wiggle room with regards to context. Justice Breyer said that generally speaking, mens rea will apply to all elements of the offense. However, there are exceptions. And Justice Breyer's opinion, I think it's fair to say, it didn't just backhandedly note the concurrence. I think we can say it expressly adopted it. Justice Breyer said, as Justice Alito notes, the inquiry into a sentence's meaning is a contextual one. What made Flores Figueroa different than 2423A and some other statute is that there was no special context present. And as Justice Alito noted in his concurrence, there are multiple offenses where knowledge of a particular element of the offense, the government does not have to prove that the defendant knew that. Before going into Justice Alito's concurrence, I would go to another point, which is that there is a mountain of case law that the government need not prove that the defendant knew a jurisdictional element of the offense. So knowingly does not apply to a jurisdictional element of the offense. That does not seem to be seriously disputed. Well, I guess the question is, what does context mean? Reading Justice Alito's concurrence, it seemed to me that the only context that he was citing to was the fact that all these other courts of appeals had decided to issue differently. I would say three things, at least. First is the uniform body of circuit law analyzing the issue. That is part of the context. The second is the fact that the Congress has returned to the statute repeatedly and not changed it. And third, I would note this overarching desire of Congress, which is evidenced in multiple congressional records and in multiple criminal statutes, the desire to afford extra protection to children with regards to all manner of things, especially sexual exploitation, but not just sexual exploitation. An example of the not just sexual exploitation is the offense of drug distribution involving minors under 21 U.S.C. 861. Judge Alito in his concurrence noted the Chin opinion. And this court in U.S. v. Cook in 1996 distinguished excitement video and specifically said that the defendant need not know that the minor or the person to whom he was distributing the drug was a minor. The government need not have proved that. And the reason for that is, as Justice Chin and Justice Motz, I'm sorry, Judge Chin and Judge Ruth Bader Ginsburg in Chin and Judge Motz in Cook, is that all it would require was the defendant to simply turn a blind eye to age and create an impossible burden on the prosecution to prove that the defendant knew under the minor age of the victim in that particular case. So that relates to drugs. But let's return to sexual exploitation. There are multiple statutes where Congress has said either implicitly or explicitly that the defendant's knowledge of age is not a defense. With regard to statutes that are silent with regard to a minor's age, in addition to the drug distribution involving minors, the fact that the recipient of the drugs was a minor, that is an element the government has to prove, plead and prove, that the government does not have to prove the defendant's knowledge. With the production of child pornography under 2251A, the statute is silent with regard to the defendant's knowledge of the minor's age. And the courts, to my knowledge, have uniformly held that the government need not prove that the minor's age, that the defendant knew the minor's age. Let me interrupt you a second. One of the things I got out of Flores' case is that we use the mens rea element to separate legal innocent conduct from wrongful conduct. And in this particular case, it's wrongful to take somebody across state lines for moral purposes for regards of age. So I mean, I'm not sure I see Flores as a bigger problem. I'm not worried about it as much as you are, I guess. Well, Your Honor, I'm actually not worried about it. The government's position is that a game changer. What Flores-Figueroa said, in general terms, is that we use accepted canons of statutory interpretation. We employ accepted canons. We read a statute within its context and give it a sensible interpretation. That's essentially what Flores-Figueroa said. And importantly, in 1028 Big A, the context, there were no special contextual points. But to your point, Your Honor, yes, the minor age, the only difference between 2421, transportation of an individual for prostitution, and 2423A, transportation of an individual who had not attained 18 years of age, is the age element. And the age element is essentially an aggravating factor that provides for a higher mandatory minimum sentence. But let's set aside the contextual argument, which the government feels is very strong and should lead to a result in which the defendant's appeal would be denied. Just looking at grammatical construction, standards of grammatical construction, the statute 2423A is sufficiently and significantly different from the statute at issue in Flores-Figueroa, such that simple grammatical construction would lead to a different result. And that is this. In 1028 Big A, the aggravated identity theft, the object of any number of those transitive verbs that immediately follow knowingly is an individual, a means of identification of an individual. In 2423A, the statute actually has a who clause, an adjective clause. What Justice Breyer said in Flores-Figueroa is that ordinarily, the knowingly will apply to not only the transitive verbs, but the full object. In 2423A, the full object is an individual who has not attained 18 years of age. There is a dependent who clause that modifies the object. If you separate individual and who has not attained 18 years of age, you are breaking apart the full object and you're not following Justice Breyer's guidance. This is an extreme example off the top of my head, but the statute doesn't refer to a book that has not attained 18 years of age or a plant that has not attained 18 years of age or a pet. It refers to an individual. That dependent who clause with individual is the full object. So following Justice Breyer's direction in the majority opinion, we get to the same thing that the defendant, in this case Mr. Washington, has to transport an individual who happens to be less than 18 years of age. This is a point that I think every court since Flores-Figueroa has glossed over. None of the courts, whether it's Taveras, Cox, or Daniels, have noticed the different grammatical construction and the dependent who clause with regard to the full object. That's understandable since the historical contextual arguments are so strong, but it seems to be a valid way nonetheless to get to the same result, which is that Flores-Figueroa doesn't change anything here and the government was not required to prove the defendant knew the individual's age. Now Judge Diaz, during Mr. Donnelly's argument, you asked him about examples of other statutes where knowingly applied to a transport but not something else related to that. The first statute that comes to mind is actually one that Justice Alito mentioned in his concurrence. This is more analogous. It's a Title VIII United States Code Section 1327, which criminalizes assisting an alien who had previously been convicted of an act of aggravated felony to enter the country. So the word is not transport, at least I don't believe it's transport, but it's an analogous proposition. With regard to that statute, the circuit courts have uniformly held that the government need not prove the defendant knew that the alien being smuggled in had previously been convicted of an aggravated felony. So unless the court has any questions with regards to the contextual arguments or the variant sentence in this case, that completes my comments. The only issue I guess I had, the use of the word context, as I read it in the Vigoria case, they're talking about the context of the statute, the context of sentencing, not context outside us, which is we want to protect children or we have a protected class. That's really not, that seems to be the driving issue for these other courts to have held that you don't have to use the word knowing when you're talking about children because they're in a protected class. But I don't know that this Supreme Court case really addresses that issue in their use of the word context. I thought it was limited to the context of the actual wordage of the statute or the context, English context, not something outside of it. Again, it does seem like, there's no doubt the statute is broad, the statute maybe is confusing, but it is what it is and I think it's, if you follow it closely, they've interjected a new element into this particular offense. Thank you.
judges: William B. Traxler, Jr., Albert Diaz, Henry F. Floyd